Kit James Gardner (161736)
**LAW OFFICES OF KIT J. GARDNER**
501 W. Broadway, Suite 800
San Diego, CA 92101-7994
Telephone: (619) 525-9900
Facsimile: (619) 374-2241

Attorney for Plaintiff PAUL BINUN

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>LARS AKE MORGAN GUSTAVSSON,<br><br>Debtor. | CASE NO. 8:23-bk-10312-TA<br><br>CHAPTER 7<br><br>ADV NO: ___________________<br><br>**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND / OR TO DENY DEBTOR'S RIGHT TO RECEIVE A DISCHARGE** |
| PAUL BINUN,<br><br>Plaintiff,<br><br>v.<br><br>LARS AKE MORGAN GUSTAVSSON,<br><br>Defendant. | |

Plaintiff Paul Binun ("Plaintiff") alleges as follows:

**GENERAL ALLEGATIONS**

1. This matter relates to the Chapter 7 case of Debtor Lars Ake Morgan Gustavsson (the "Debtor") filed in this Court, Case No. 8:23-bk-10312-TA. This matter constitutes a core proceeding to be heard and determined by this Court in accordance with 28 U.S.C. §§ 157(b)(2)(A), (I), and (J). Plaintiff consents to entry of final orders by the Bankruptcy Court.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) and (b) because it arises under and/or is related to the above-referenced bankruptcy case.

3. Venue is proper in this District in accordance with 28 U.S.C. § 1409(a) because this case arises in or is related to the above-referenced bankruptcy case.

**FACTUAL ALLEGATIONS**

4. Defendant GUSTAVSSON holds himself out as a pioneer in the medical and aesthetic laser device industry since working as a medical doctor in the 1980s and has founded and headed medical device companies in the United States and European Union for over two decades.

5. Defendant GUSTAVSSON holds himself out as an expert in a new technology known as TRASER which has numerous applications, including for treatment of nasal telangiectasia. Nasal telangiectasia is a condition in which widened venules (tiny blood vessels) cause threadlike red lines or patterns on the skin. TRASER stands for "Total Reflection Amplification of Spontaneous Emission of Radiation."

6. Plaintiff BINUN holds a Master's of Science degree in Applied Physics from the University of California at San Diego, and is an inventor of the technology used for an application that has become known as the "LASER RAZOR" and for various augmentations of the Laser Razor. BINUN also at one time owned various patents relating to the Laser Razor and its various augmentations. The Laser Razor is essentially a personal razor that uses a laser to remove body hair.

**A. Defendant's Pre-Bankruptcy Conduct**

7. On or about December 22, 2014, BINUN and GUSTAVSSON met in Irvine, California and discussed the future of a new company to be formed for the commercialization of the Laser Razor technology. The meeting started in GUSTAVSSON's office at 6 Morgan, Suite 120, Irvine, California, and then carried over to Alton Café and then back to the office. During the meeting, GUSTAVSSON made the following promises and representations to BINUN:

a. GUSTAVSSON promised to fund the research and development of the Laser Razor, including but not limited to, through the use of funds to be realized from the development of TRASER technology that GUSTAVSSON was positioning for sale to a company known as Solta Medical, Inc.

b. GUSTAVSSON promised to not require money from BINUN to fund the new Laser Razor company.

c. GUSTAVSSON promised that BINUN would be a 50/50 owner in any such venture.

d. GUSTAVSSON promised BINUN that he would be paid a fair market value salary for his services to the new company, and that the funds used to pay BINUN would come from GUSTAVSSON's fundraising for the new company, including money to be received from Solta Medical, Inc. in connection with the sale of TRASER Technology.

e. GUSTAVSSON promised to pay the fees required to maintain the Laser Razor intellectual property, including the intellectual property BINUN would assign to the new company.

f. GUSTAVSSON promised to provide the new company with extensive funding required for salaries, overhead, research and development and fees associated with intellectual property filings.

g. GUSTAVSSON represented he was highly skilled and experienced at raising outside funding and he would take the necessary steps to obtain the outside funding required for successful development of the Laser Razor.

8. On or about June 30, 2015, GUSTAVSSON formed SKARP TECHNOLOGIES LTD. ("SKARP LTD."), a British Virgin Islands company. GUSTAVSSSON was a 50 percent shareholder in SKARP LTD., a director, and the President of SKARP LTD. GUSTAVSSON managed the day-to-day business of SKARP LTD. In accordance with GUSTAVSSON's promise to BINUN, BINUN became a 50 percent shareholder in SKARP LTD. Prior to formation of SKARP LTD. and thereafter, GUSTAVSSON's promises and representations were reaffirmed

to BINUN over an extended period of time and in some cases were reduced to writing, including for example the following:

a. GUSTAVSSON made many representations concerning his wealth and ability to finance BINUN's salary and the ongoing operations of SKARP LTD. and SKARP INC. including but not limited to that he owned real property in Thailand and Mexico. On or about August, 2015, Gustavsson stated to BINUN that GUSTAVSSON'S interest in the TRASER intellectual property was worth at least $8 million. In or about October 2015, GUSTAVSSON reiterated to BINUN that GUSTAVSSON held more than $8 million in TRASER intellectual property and that he would put $3.2 million into SKARP.

b. In October 2015, GUSTAVSSON explained that the TRASER Technology was in clinical trials and there would be recommendations received from doctors regarding the technology and he would receive approximately $8 million as a result of the TRASER Technology and the transaction he was working on with Solta Medical Inc. GUSTAVSSON stated at least $3 million would be put into SKARP LTD.

c. In October 2015 GUSTAVSSON stated he had other personal assets he could use to fund SKARP LTD. in addition to the money he would receive from the transaction with Solta Medical Inc. and that such assets included his house in Mexico. GUSTAVSSON later stated to BINUN that he had a house in Thailand and other personal assets for the funding of SKARP LTD.

d. On October 5, 2015, GUSTAVSSON sent an email to BINUN from his email address morgan@skarptechnologies.com. In the context of discussing investors, GUSTAVSSON stated "We will get cents on the dollar compared with when we are shipping product. I am ok with that if it is necessary. *I will first use all my revenue from selling the TRASER to Solta, if needed.*" (Emphasis added.)

e. In a text dated October 12, 2015, GUSTAVSSON stated he would get paid from Solta Medical Inc. and he would take $1.2 million to pay salaries for one year and $2 million for rent and other SKARP LTD. expenses.

f. On December 8, 2015, GUSTAVSSON received a detailed email from a Senior Director at Solta Medical Inc. describing the status of the Senior Director's efforts to obtain executive leadership's decision as to whether the "TRASER Project" would be approved for product development and related details, including the status of licensing terms. On December 9, 2015, GUSTAVSSON forwarded the email to BINUN. In doing so, GUSTAVSSON again reaffirmed his promise to use the revenue from selling or licensing TRASER technology to Solta Medical Inc. to fund SKARP LTD.

9. On or about March 10, 2016, GUSTAVSSON formed SKARP TECHNOLOGIES INC. ("SKARP INC."), a Delaware company. GUSTAVSSSON was a 50 percent shareholder in SKARP INC., a director, and the President of SKARP INC. GUSTAVSSON managed the day-to-day business of SKARP INC. In accordance with GUSTAVSSON's promise to BINUN, BINUN became a 50 percent shareholder in SKARP INC.

a. In 2016, GUSTAVSSON repeatedly asked BINUN to continue working for SKARP LTD. and SKARP INC. GUSTAVSSON repeatedly stated that his funding for SKARP LTD. and SKARP INC. would be accomplished through revenue he would receive from selling TRASER Technology to Solta Medical, Inc.

b. In an email dated April 11, 2016, from GUSTAVSSON to BINUN, GUSTAVSSON reiterated his promises to use the TRASER Technology money to fund SKARP. In particular, GUSTAVSSON stated "I wanted you to know that money is [in] the works, slow but moving. Will go to Skarp."

c. In a text string dated May 2016 between GUSTAVSSON and BINUN, GUSTAVSSON explained that he was "impressed with where Solta is on the

productization of the TRASER." He also stated "I pledge most of [the money from TRASER] to SKARP if nothing comes in earlier."

d. In a Slack message dated June 7, 2016, GUSTAVSSON informed BINUN of certain details regarding GUSTAVSSON's negotiations with Solta Medical Inc. GUSTAVSSON described a future transaction where he would receive from Solta Medical Inc. hundreds of thousands of dollars from Solta in the form of a payment upon signing, a significant quarterly payment, plus monthly payments plus a significant royalty on sales. The message described the low end of the negotiations with Solta Medical Inc. GUSTAVSSON explained that the actual up-front payment from Solta Medical Inc. would be much higher than the low end of the bracket in the negotiations between GUSTAVSSON and Solta Medical Inc.

e. In an email dated September 21, 2016, GUSTAVSSON asked an engineer from SKARP LTD. to put SKARP LTD. work on hold in favor of TRASER work so GUSTAVSSON could close the transaction with Solta Medical Inc. GUSTAVSSON wrote "The more $ I get from Solta, the more can be dumped on Skarp" GUSTAVSSON copied BINUN with the email. In doing so GUSTAVSSON again reaffirmed his promise to use the revenue from selling TRASER technology to Solta Medical Inc.

10. In reliance on GUSTAVSSON's promises and representations, BINUN resigned from his consulting positions as an engineering manager for several third-party entities, BINUN became more heavily involved with SKARP, LTD. and SKARP INC. and BINUN performed and continued to perform services as Chief Technology Officer. By resigning his positions with third-party entities, BINUN lost thousands of dollars of income each month. In addition, BINUN agreed to temporarily forego his salary as Chief Technology Officer until such time as GUSTAVSSON received money from the transaction with Solta Medical Inc. BINUN also agreed to assign to SKARP LTD. and/or SKARP INC. his personal intellectual property rights pertaining to the Laser Razor and its various augmentations.

11. On March 16, 2017, GUSTAVSSON texted BINUN and stated "TRASER is not sold, better up. I licensed the TRASER IP w a steep entry of cash consideration. My Trust own that IP still. If things work out so will my Trust enjoy royalty for 17 years. Even in countries where I [sic] no patents. Pretty sweet deal." BINUN is informed and believes that as a result of the licensing transaction GUSTAVSSON and/or his trust entered into with Solta Medical Inc. GUSTAVSSON and/or his trust received a substantial amount of cash consideration and further that GUSTAVSSON and/or his trust began to enjoy royalty payments from the licensing transaction.

12. On April 17, 2017, BINUN inquired about GUSTAVSSON's promise to fund SKARP INC. with $3.2 million and why GUSTAVSSON had not done so. GUSTAVSSON raised his voice in response and stated he had made no such promise, although GUSTAVSSON knew he had in fact made such a promise. BINUN stated he had GUSTAVSSON's promise in writing. GUSTAVSSON lowered his voice and stated "Oh Dear!" Later that day, BINUN checked his SKARP INC. email account but it had been disabled by GUSTAVSSON or at his direction. BINUN then checked his SKARP INC. Dropbox account but it would not sync and had been disabled by GUSTAVSSON or at his direction.

13. In fact, GUSTAVSSON did not fund SKARP INC. as promised, including but not limited to providing promised funding for overhead, research and development, and payment of compensation to BINUN for his services as Chief Technology Officer.

14. After approximately August 2016, GUSTAVSSON stopped any efforts to raise money from other sources and focused his efforts on the Solta Medical Inc. transaction, but then failed to use the money to fund SKARP INC., despite his numerous promises and representations that he would do so. In fact, Plaintiff alleges on information and belief that: GUSTAVSSON and/or one or more entities controlled by GUSTAVSSON received money which was used to finance SKARP INC.; GUSTAVSSON used that money as a pretext to dilute BINUN's shares; then used some or all of the funds for GUSTAVSSON's personal use, including to travel to Dubai to start a company owned by him, personally, called "Halaq" which means "Shave" in Arabic that is in direct competition with SKARP INC.

15. As a result, BINUN did not receive compensation for his services and he ultimately had no choice but to resign as Chief Technology Officer in October 2018. BINUN still had not received compensation for his services as Chief Technology Officer, and GUSTAVSSON never funded the company as promised to BINUN even though he closed the transaction with Solta Medical, Inc. and had the funds to fund SKARP INC.

16. BINUN is now left without his personal intellectual property that GUSTAVSSON fraudulently induced him to assign to SKARP LTD. and SKARP INC. and without any compensation for his services to SKARP LTD. and SKARP INC. rendered at the request of GUSTAVSSON. Furthermore, despite GUSTAVSSON's promise and representation that he and BINUN would always own equal shares in SKARP INC., GUSTAVSSON would later engineer a dilution of BINUN's shares and work to oust BINUN from any control over decisions made on behalf of the company,

17. SKARP LTD. and SKARP INC. went through a corporate restructuring in or about December 2018 which resulted in the assets and liabilities of SKARP LTD. being taken on by SKARP INC. As a result of the corporate restructuring, SKARP LTD. became a wholly owned subsidiary of SKARP INC.

**B. Defendant's Bankruptcy**

18. On February 17, 2023, GUSTAVSSON filed a voluntary petition in this Court for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

19. GUSTAVSSON's bankruptcy petition states that his residence is in Tustin, California; however, Plaintiff alleges on information and belief that GUSTAVSSON's residence is and has in fact been in Mazatlan, Mexico, despite his assertions in his bankruptcy case to the contrary.

20. In his first set of Schedules and Statement of Financial Affairs filed with the Court on February 17, 2023, GUSTAVSSON failed to list:

a. His interest in real property in Mazatlan, Mexico.

b. His interest in an entity called the Gustavsson Nevada Trust.

c. Various bank accounts, including an account in Mexico.

d. A Ford F150 motor vehicle.

e. His addresses for the prior three years, including his residence in Mexico.

21. At the first meeting of creditors on March 29, 2023, pursuant to section 341(a) of the Bankruptcy Code, GUSTAVSSON affirmed under oath that:

a. He reviewed his Schedules before he signed them, and to the best of his knowledge, everything in them was true and correct.

b. He listed everything that he owned.

c. He listed all of his creditors.

d. Other than the potential right to receive shares in a company called Traser Technologies, he did not know of any changes that needed to be made to his bankruptcy documents.

e. His wife might have title to a house in Mexico, but he was not sure of that.

f. All bank accounts were disclosed.

22. After he had been questioned extensively at the meeting of creditors held on March 29, 2023, by BINUN and the Chapter 7 Trustee concerning the real property in Mazatlan, Mexico, GUSTAVSSON filed an amended set of Schedules and Statement of Financial Affairs on April 27, 2023. The amended Schedules listed his interest in the Gustavsson Nevada Trust and additional bank accounts, but did not list the real property in Mazatlan, Mexico, or the Ford pickup truck.

23. On April 28, 2023, GUSTAVSSON filed amended Schedules in which he listed the real property in Mazatlan Mexico; however, GUSTAVSSON said that the property was "pd entirely by wife," which is false. Furthermore, at subsequent section 341(a) meetings, GUSTAVSSON tried to mislead the Chapter 7 Trustee by claiming that his wife purchased the property with funds of her own. As it turns out, the real property in Mazatlan was purchased with funds from an inheritance that GUSTAVSSON alone received.

24. On May 3, 2023, GUSTAVSSON filed amended Schedules in which he disclosed the Ford pickup truck. The May 3, 2023, Schedules repeat the falsehood that the real property in Mazatlan, Mexico was "pd entirely by wife."

25. None of the Schedules filed by GUSTAVSSON accurately list his monthly expenses, since none of the Schedules or amended Schedules list the expenses incurred in connection with GUSTAVSSON's real property in Mexico, such as gas, electricity, etc. Plaintiff alleges that such expenses were deliberately omitted in an effort to conceal GUSTAVSSON's ownership interest in the real property.

26. Plaintiff is further informed and believes that GUSTAVSSON's Schedules and amended Schedules do not list GUSTAVSSON's ownership interests in various items of other property, including but not limited to property which Plaintiff is informed and believes are: his interest in real property in Thailand; his interest in real property in Sweden; musical instruments. Alternatively, Plaintiff alleges that GUSTAVSSON transferred his interests in such property to third-parties and deliberately failed to list the transfers in his Schedules and Statement of Financial Affairs. Additionally, assuming that GUSTAVSSON's many representations to BINUN concerning the value of his TRASER intellectual property were true, then GUSTAVSSON has failed to disclose in these bankruptcy proceedings the true value of his interest in the intellectual property, whether owned by him directly or indirectly.

**FIRST CLAIM FOR RELIEF**

(Determination of Dischargeability of Debt Pursuant to Section 523(a)(2)(A))

27. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 17, and paragraph 26, as though fully set forth herein.

28. The representations and promises that GUSTAVSSON made to BINUN, including in Paragraphs 7 through 10, *supra*, were false and/or made without an intent to perform them.

29. GUSTAVSSON knew that the representations and promises he made and continued to make were false when he made them, or alternatively, the representations and promises were made recklessly and without regard for their truth.

30. BINUN reasonably relied on GUSTAVSSON's representations and promises in resigning from his consulting positions as an engineering manager for several third-party entities, becoming more heavily involved with SKARP, LTD. and SKARP INC. and performing

services as Chief Technology Officer. By resigning his positions with third-party entities, BINUN lost thousands of dollars of income each month. In addition, BINUN agreed to temporarily forego his salary as Chief Technology Officer until such time as GUSTAVSSON received money from the transaction with Solta Medical Inc. BINUN also agreed to assign to SKARP LTD. and/or SKARP INC. his personal intellectual property rights pertaining to the Laser Razor and its various augmentations.

31. As a result of GUSTAVSSON'S fraud, BINUN was harmed, and BINUN's reliance on GUSTAVSSON's representations which were a substantial factor in causing him harm in an amount to be established according to proof and not less than $925,000.

32. Plaintiff alleges on information and belief that GUSTAVSSON transferred money and/or property in which he possessed an ownership interest with the intent to hinder, delay and/or defraud Plaintiff.

33. Plaintiff's damages are a direct and proximate result of the acts alleged herein.

34. In doing the acts herein alleged, GUSTAVSSON acted with oppression, fraud, and/or malice, and BINUN is entitled to punitive damages.

35. As a result of the foregoing, Plaintiff alleges that Defendant obtained from Plaintiff money, property, services or an extension, renewal or refinancing of credit by false pretenses, a false representation and/or actual fraud, all within the meaning of section 523(a)(2)(A) of the Bankruptcy Code, and Defendant is not entitled to a discharge of his debt to Plaintiff pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

**SECOND CLAIM FOR RELIEF**

(Determination of Dischargeability of Debt Pursuant to Section 523(a)(2)(B))

36. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 17 as though fully set forth herein.

37. GUSTAVSSON, with an intent to deceive, made representations in writing concerning his or an insider's financial condition. Plaintiff alleges on information and belief that such representations were materially false.

38. BINUN reasonably relied on GUSTAVSSON's representations in resigning from

his consulting positions as an engineering manager for several third-party entities, becoming more heavily involved with SKARP, LTD. and SKARP INC. and performing services as Chief Technology Officer. By resigning his positions with third-party entities, BINUN lost thousands of dollars of income each month. In addition, BINUN agreed to temporarily forego his salary as Chief Technology Officer until such time as GUSTAVSSON received money from the transaction with Solta Medical Inc. BINUN also agreed to assign to SKARP LTD. and/or SKARP INC. his personal intellectual property rights pertaining to the Laser Razor and its various augmentations.

39. Plaintiff's damages are a direct and proximate result of the acts alleged herein.

40. As a result of GUSTAVSSON'S fraud, BINUN was harmed, and BINUN's reliance on GUSTAVSSON's representations were a substantial factor in causing him harm in an amount to be established according to proof and not less than $925,000.

41. In doing the acts herein alleged, GUSTAVSSON acted with oppression, fraud, and/or malice, and BINUN is entitled to punitive damages.

42. As a result of the foregoing, Plaintiff alleges that Defendant obtained from Plaintiff money, property, services or an extension, renewal or refinancing of credit by use of a statement in writing that was materially false respecting the debtor's or an insider's financial condition on which Plaintiff reasonably relied and that the Defendant made or published with intent to deceive, all within the meaning of section 523(a)(2)(B) of the Bankruptcy Code, and Defendant is not entitled to a discharge of his debt to Plaintiff pursuant to section 523(a)(2)(B) of the Bankruptcy Code.

**THIRD CLAIM FOR RELIEF**

(Determination of Dischargeability of Debt Pursuant to Section 523(a)(4))

43. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 17 and paragraphs 28 through 32 as though fully set forth herein.

44. GUSTAVSSON, as a 50 percent owner of SKARP LTD. and SKARP INC., as well as a member of the Board of Directors and an officer of those companies, owed BINUN a fiduciary duty.

45. Plaintiff alleges that GUSTAVSSON committed fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

46. Plaintiff's damages are a direct and proximate result of the acts alleged herein.

47. As a result of GUSTAVSSON'S acts and/or omissions, BINUN was harmed, and GUSTAVSSON's acts and/or omissions were a substantial factor in causing BINUN harm in an amount to be established according to proof and not less than $925,000.

48. In doing the acts herein alleged, GUSTAVSSON acted with oppression, fraud, and/or malice, and BINUN is entitled to punitive damages.

49. As a result of the foregoing, Plaintiff alleges that Defendant committed fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny within the meaning of section 523(a)(4) of the Bankruptcy Code, and Defendant is not entitled to a discharge of his debt to Plaintiff pursuant to section 523(a)(4) of the Bankruptcy Code.

**FOURTH CLAIM FOR RELIEF**

(Determination of Dischargeability of Debt Pursuant to Section 523(a)(6))

50. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 17 and paragraphs 28 through 32 as though fully set forth herein.

51. GUSTAVSSON has caused willful and malicious injury to Plaintiff within the meaning of section 523(a)(6) of the Bankruptcy Code.

52. Plaintiff's damages are a direct and proximate result of the acts alleged herein.

53. As a result of GUSTAVSSON'S acts and/or omissions, BINUN was harmed, and GUSTAVSSON's acts and/or omissions were a substantial factor in causing BINUN harm in an amount to be established according to proof and not less than $925,000.

54. In doing the acts herein alleged, Defendant acted with oppression, fraud, and/or malice, and Plaintiff is entitled to punitive damages.

55. As a result of the foregoing, Plaintiff alleges that Defendant has committed willful and malicious injury to Plaintiff within the meaning of section 523(a)(6) of the Bankruptcy Code, and Defendant is not entitled to a discharge of his debt to Plaintiff pursuant to section 523(a)(6) of the Bankruptcy Code.

**FIFTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(2)(A))

56. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

57. Defendant, with an intent to hinder, delay and/or defraud creditors, including Plaintiff, transferred, removed, and/or concealed assets including, but not limited to, the following:

a. His interest in real property in Mazatlan, Mexico.

b. His interest in an entity called the Gustavsson Nevada Trust.

c. Various bank accounts, including an account in Mexico.

d. A Ford F150 motor vehicle.

58. Plaintiff is further informed and believes that Defendant's Schedules and amended Schedules do not list Defendant's ownership interests in various items of other property which Plaintiff is informed and believes are: his interest in real property in Thailand; his interest in real property in Sweden; and musical instruments.

59. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(2)(A) of the Bankruptcy Code.

**SIXTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(2)(B))

60. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraph 1 through 26 as though fully set forth herein.

61. Defendant, with an intent to hinder, delay and/or defraud creditors or an officer of the estate charged with custody of property under the Bankruptcy Code, concealed property of the estate of the Defendant after the date of filing of the petition including, but not limited to, the following:

a. His interest in real property in Mazatlan, Mexico.

b. His interest in an entity called the Gustavsson Nevada Trust.

c. Various bank accounts, including an account in Mexico.

d. A Ford F150 motor vehicle.

62. Plaintiff further alleges on information and belief that Defendant, with an intent to hinder, delay and/or defraud creditors or an officer of the estate charged with custody of property under the Bankruptcy Code, transferred, removed, and/or concealed property of the estate of the Defendant after the date of filing of the petition including, but not limited to, what the Plaintiff is informed and believes are the following: Real property in which Defendant possesses an interest located in Thailand; real property in which Defendant possesses an interest located in Sweden; various musical instruments.

63. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(2)(B) of the Bankruptcy Code.

**SEVENTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(3))

64. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraph 1 through 26 as though fully set forth herein.

65. Plaintiff alleges on information and belief that Defendant has concealed, destroyed, mutilated, falsified, and/or failed to keep or preserve any recorded information from which the financial condition of Defendant might be ascertained including, but not limited to, what the Plaintiff is informed and believes are the following: Real property in which Defendant possesses an interest located in Thailand; real property in which Defendant possesses an interest located in Sweden; various musical instruments.

66. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(3) of the Bankruptcy Code.

/ / /

/ / /

/ / /

**EIGHTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(4)(A))

67. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

68. Plaintiff alleges on information and belief that Defendant knowingly and fraudulently made false oaths or accounts in connection with his bankruptcy case, including but not limited to the following:

a. That Defendant resides in Tustin, California.

b. That the real property in Mazatlan, Mexico, in which the Defendant possesses an interest was paid for by his wife.

c. That Defendant does not possess an interest in property located in Thailand, Sweden and/or various musical instruments.

69. In addition, at the first meeting of creditors held on March 29, 2023, Defendant represented under oath that: he reviewed his Schedules before he signed them, and to the best of his knowledge, everything in them was true and correct; he listed everything that he owned; he listed all of his creditors; other than the potential right to receive shares in a company called Traser Technologies, he did not know of any changes that needed to be made to his bankruptcy documents; his wife might have title to a house in Mexico, but he was not sure of that; all bank accounts were disclosed.

70. In fact, however, such representations were false, and Plaintiff alleges that Defendant knowingly and fraudulently made such oaths or accounts were false.

71. Furthermore, Plaintiff alleges on information and belief that Debtor made other false oaths or accounts in connection with the case that additional examination and discovery will reveal.

72. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(4)(A) of the Bankruptcy Code.

/ / /

**NINTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(4)(D))

73. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

74. Plaintiff alleges on information and belief that Defendant knowingly and fraudulently, in connection with his bankruptcy case, withheld from an officer of the estate entitled to possession under the Bankruptcy Code, recorded information, including books, documents, records, and papers, relating to Defendant's property or financial affairs, including but not limited what Plaintiff is informed and believes are the following: Real property in which Defendant possesses an interest located in Thailand; real property in which Defendant possesses an interest located in Sweden; various musical instruments.

75. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(4)(D) of the Bankruptcy Code.

**TENTH CLAIM FOR RELIEF**

(Denial of Debtor's Right to Receive Discharge Pursuant to Section 727(a)(5))

76. Plaintiff realleges and incorporates herein by reference all the allegations set forth in paragraphs 1 through 26 as though fully set forth herein.

77. Defendant has failed to explain satisfactorily the loss of assets or deficiency of assets to meet the Defendant's liabilities, including but not limited to what Plaintiff believes are the following: Real property in which Defendant possesses an interest located in Thailand; real property in which Defendant possesses an interest located in Sweden; various musical instruments.

78. As a result of the foregoing, Plaintiff alleges that Defendant is not entitled to receive a discharge in his bankruptcy case under Chapter 7 of the Bankruptcy Code pursuant to section 727(a)(5) of the Bankruptcy Code.

/ / /

/ / /

WHEREFORE, Plaintiff prays for relief as follows:

ON THE FIRST THROUGH FOURTH CLAIMS FOR RELIEF:

1. For a determination on the First through Fourth Claims for Relief that the debt owing to Plaintiff in the amount of no less than $925,000 is not dischargeable pursuant to sections 523(a)(2), (a)(4) and/or (a)(6) of the Bankruptcy Code;

2. For prejudgment interest;

3. For exemplary damages;

4. For costs of suit; and

5. For such other and further relief as the Court deems just and proper.

ON THE FIFTH THROUGH TENTH CLAIMS FOR RELIEF:

6. For a determination on the Fifth through Tenth Claims for Relief that Defendant is not entitled to receive a discharge of any debts in his bankruptcy case;

7. For costs of suit; and

8. For such other and further relief as the court deems just and proper.

LAW OFFICES OF KIT J. GARDNER

Dated: May 30, 2023

By: /s/ Kit J. Gardner .
Kit J. Gardner
Counsel for Plaintiff Paul Binun